The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. You may be seated. In our second case this morning, number 241493, we have Bestwall v. The Official Committee of Asbestos Claimants. Mr. Frederick, good to have you with us, Mr. Frederick. Thank you, Judge King, and may it please the Court, David Frederick for the Official Committee, I'd like to reserve time for rebuttal. The Constitution's Bankruptcy Clause has never encompassed debtors who are able to pay their debts to creditors. Yet as the Bankruptcy Court found and Bestwall concedes, Bestwall has, quote, the full ability to meet all its obligations. What's your best case since the founding that supports that premise? Well, Wright defined what a proper subject of bankruptcy is in terms of who the debtor is. Wright relied on Justice Blatchford's definition from In re Riemann. Justice Story in his commentaries on the Constitution had the same definition, and there is no case involving a debtor who was fully able to pay all its debts. I want to point to the concession and the finding by the Bankruptcy Court in the constitutional matter. Are you saying that there's, because I had a little trouble figuring out exactly what the argument was, are you saying there's a subject matter jurisdiction defect here under the Bankruptcy Clause? Yes. Let me explain. So tell us what case we've had since 1788 that says that. Well, what the courts have said, the Supreme Court has said in several cases, including the Railway Laborers' Executive case and in the Wright case from the 1930s, that the subject of bankruptcies is not unlimited. And the reason why this invokes the subject matter jurisdiction of the federal courts is that Article III makes clear that federal courts are courts of limited jurisdiction. So if the Bankruptcy Clause is read to allow any person claiming to be a debtor, that transforms the state law claims that otherwise a federal court would not have jurisdiction over into federal bankruptcy claims. And that delimitation, Judge Agee, implicates the subject matter jurisdiction of an Article III court. How could you be a Chapter 13 debtor? I'm not sure I follow. Well, because there's no requirement in the statute that fits what you say. I mean, if your theory is correct, it seems like to me there are thousands and thousands and thousands of Chapter 13 cases or Chapter 10 cases or Chapter 11s that are simply void. Well, no, Your Honor, because any bankruptcy has to involve some level of nonpayment by a putative debtor. And that is a foundational North Star component. Didn't Johns Mansville, didn't in the case where we have the first 524G concept, if not statutory provision, then involve a debtor who was able to pay its debts as they were and was worried about the implications of future liabilities? The way Johns Mansville has been described and understood is that at some point in a foreseeable future, Johns Mansville would be unable to pay. And I would note this is outside the record, but the Johns Mansville Trust is only paying 1% of the trust amounts to putative claimants. So as a matter of both fact and how it was understood at the time, there's no question that Johns Mansville was in distress and was unable to pay in a meaningful understanding of bankruptcy. Can I just, I'm trying to, in thinking about this, it seems to me that there's a question that I understand that the committee making about the financial distress requirement. And the question I have, though, is whether that's a subject matter jurisdiction requirement. It seems, I wonder why this isn't fairly simple. The Constitution gives federal courts, you're right, they're limited. But the way they're limited is by, you know, to disputes involving matters involving the laws of the United States. I'm not getting it exactly right. The Bankruptcy Code is a law of the United States. It seems, why isn't it not subject matter jurisdiction-wise that simple? And your argument, however good it may be, and I'm not discounting it at all, is an issue that comes up, you know, maybe. It's already come up once in the bad faith context. It could come up later in the confirmation context. It could come up in the eligibility, maybe very, very legitimate argument, but it's not a subject matter jurisdiction argument. It is, and here's why. Subject matter jurisdiction goes to the power of the courts. The Bankruptcy Court recognized that this was a subject matter jurisdiction question because it went to the Bankruptcy Court's power. If you were to accept the other side's argument, it would be a delimitation on structural limitations on federal court jurisdiction, and here's why. It federalizes state law claims that the claimants would be bringing against the debtor, the wrongdoer, the tortfeasor. These are all state law tort claims. And if you accepted the idea that a nonpaying or a fully paying debtor gets to bypass the state court process by going to federal court, you are taking what would have been a limitation on the federal court's jurisdiction over state law claims and transforming it into a subject matter jurisdiction point. But the debtor, I think I'm having trouble connecting that. I mean, because I take it that they are a bunch of state law claimants. These cases tend to not exclusively arise in state court. They can be in federal court with diversity jurisdiction, but generally they're state court cases. I grant you that. But a debtor could have all sorts of state law claims. It could have state law contract claims. Someone could be suing a debtor for not paying the lease. We just got through with a lease case. And that all gets wrapped up in bankruptcy, and we don't have a problem there with jurisdiction. Because the limitation of the bankruptcy clause has to go to nonpaying debtors. If it's a fully paying debtor, there's no reason for it to be in bankruptcy, and there's no reason for the Constitution. This is a great policy argument for the Congress, but I go back. Tell us again, what do you think is your absolute best case that says this? Because I frankly have – I'm just not seeing anything since 1788 that adopts your position. And the reason, Your Honor, is because you can't find anything from 1789 for a debtor that agrees to fully pay all of its liabilities now and, quote, in the foreseeable future. That's at JA-1906. But for 230 years, this has never come up. That's correct. This is a total – We're plowing a new furrow. Is that right? That is absolutely right. And I acknowledge –  I candidly acknowledge, Your Honors, this is a novel argument. It is a novel argument because for four years and three months, the district court would not rule on whether the statutory problem that we identified in the first motion to dismiss should be the subject to appellate review. And which term are you using to decide whether they can't get into – or whether they can get into bankruptcy court? You're not arguing insolvency. No. Financial distress? No. Nonpayment. We think that the test – Nonpayment. Nonpayment. And that's what Justice Story said? That's correct. What Justice Story – Was that 1840 or something? That's correct. And it was in the commentaries on the Constitution. So the Third Circuit's wrong. He did not have a case. He did not have a case. Justice Story wrote some books, didn't he? I understand. And 100 years later in the Wright case in the Supreme Court said the purpose of bankruptcy is to relieve the honest debtor of oppressive indebtedness and permitting him to start afresh. The Continental Illinois case from the Supreme Court said the subject of bankruptcies concerns a failing debtor's obligations. And even in Carolyn, this court said that if the debtor is not worthy of protection and rehabilitation, then bankruptcy has lost its reason to exist. Sure. I mean, and I don't say sure by agreeing or disagreeing, but that might be a great argument. It might be a winner on whether you're an eligible debtor. It might be a winner, probably not this time, on bad faith, but it might be a winner particularly if you have a plan that later on the road doesn't implement Section 157 or implies a payment scheme where people are going to get the Johns Mansville sort of haircut when there's no basis for it. But still, there's a separate question of whether that's jurisdictional. I just don't understand that. So Congress cannot enact laws that violate the due process rights or the jury trial rights of claimants. The justification for bankruptcy allowing it the power to do so is because there is a limited amount of money to distribute. So the Fifth and Seventh Amendments are a hook for you. Correct. And that's because if Congress is deemed to be having the power to do anything in bankruptcy, the previous case that we just heard could have come to you through bankruptcy because of a desire from a fully able-to-pay debtor simply choosing to go to the bankruptcy route and forcing the creditors to go through that process in order to resolve the lease dispute that they apparently had. So under your view, when a creditor asks for relief from the stay in order to pursue an existing case, they're making a Fifth and or, if it's a jury case, Seventh Amendment claim. It could be, Your Honor, and I don't want to re-argue the last case that was before you in this cycle. It might be helpful for us to resolve the last case. Well, what I would say is here, I don't have a brief to re-argue that. We accept the idea that you concluded that it was related to, for purposes of that injunction, jurisdiction. But what I am saying is that the debtor can't bring a bankruptcy to begin with under the meaning of the Constitution if it's willing to pay everything. And J.A.'s 1906. Best Law is willing to pay everything. Correct. And they got a funding agreement. Is that what it's called?  Some kind of a deal with New Georgia Pacific.  That whatever they pay in connection with these asbestos cases, asbestos claims, is going to be repaid. That's correct. Tax costs, damages, whatever comes up. Best Law is safe harmless.  Is that what would be a safe harmless agreement? I don't know what it is. Well, I don't know exactly whether you would call it a hold harmless agreement or not. It's an indemnification. It's an indemnification for sure. And the point is that this is a $30 billion company that is guaranteeing. Best Law doesn't have any business being in the bankruptcy court. Correct. It doesn't have any business to rehabilitate. That's what you got certified here to us. Now the question on whether it was subject matter jurisdiction, the bankruptcy court ruled in your favor. Correct. That went to subject matter jurisdiction. Right. And in answer to Judge Quattlebaum, I'm trying to give you the structural reasons why it has to be viewed that way. Because otherwise bankruptcy becomes the fish that swallows the ocean of limitations on federal court jurisdiction. So tell me how a Chapter 13 proceeds under your theory. There's zero in the statute that says what you say. Your Honor, I am not familiar with Chapter 13 processes. And if you want to ask me an example based on your knowledge that I can, you know, try to answer, I can try to do so. But none of the, I mean, that's, I guess my point is that there's a very specific statutory requirement that an individual has to fulfill in order to file a 13. Now when you get into it, you may find out, well, they're ineligible because they don't meet those requirements. But there's no requirement in there that they, depending on the phrase you want to use, they can't pay their debts. They're actually bankrupt. They're insolvent. None of that appears. And Congress knows how to do that because it wrote it into the Chapter 9 provision, a specific insolvency requirement. And I think that's the only place it shows up in the entire code. But my point, Your Honor, is that this is a Chapter 11 reorganization. And the reorganization for a debtor has to – Right, but those 11s and 13s were unknown at the time the bankruptcy clause was adopted. And it just, I don't mean to keep coming back to this, but it seems like under your argument it would void basically all Chapter 13 cases. I'm not here to argue about Chapter 13. But what I am here to argue about, Judge Agee, is that Congress does not have the power to delimit federal court jurisdiction. We know that there are protections for jury trial rights, for opt-outs under due process. I want to point you to the Ortiz v. Fiberboard case, which says that when you impose mandatory aggregate limits with no opt-out rights, that is a violation of the due process rights of the claimants. And Congress can't override that. That's a constitutional ruling in principle. And so however the machinations of different titles of the bankruptcy code might work, we know Chapter 11 cannot operate in the way Bestwal is seeking to do because that does – that application runs afoul of the bankruptcy clause. Can I ask one follow-up? And I know you're out of time, but if our lead judge is okay with this question, I'd like to get your view on it. It sounds like your position – there's a lot of hullabaloo about Texas two-step and things like that. It sounds like your position here today doesn't have anything to do with that, that whether or not you're a one-step, two-step, three-step, four-step, the debtor has got to be unable to pay their debts. That's correct. That's correct. And we're not here to re-argue state law with respect to – we are here to challenge the second step, which is the declaration of bankruptcy. I've got another question too on some facts. Our recollection from the earlier case was the number came up of potential asbestos claims pending was around 30,000 to 40,000. And in your papers, I think you refer to the number 56,000. Do we really know, or are we talking about potential claims and aggregating them or not aggregating them? What are we talking about here? Well, we are talking about future claimants as well whose asbestosis has not materialized. Those estimates, those numbers? I beg your pardon? Is 56,000 the best number? I think that that is as good as I can do for you standing here today, but I would say that 25,000 of those have died since the bankruptcy was filed eight years ago and that there is no prospect that this bankruptcy is going to end. The estimation trial is not going to occur until November 2027, and it may take two or three years after that for any kind of confirmation. And where BestWall is seeking to have a cap on its aggregate liabilities, the whole reason why we're here is because they were paying claims, Georgia Pacific was paying claims in the state tort process and decided to shunt all of these disfavored creditors into a process by which they could cap their liability. But how they cap it may be a valid issue. We don't know how they're capping, right? That's a confirmation issue. That's correct. But what I'm saying is that that principle gives rise to the due process problem that Congress cannot override by saying, we're going to strike the bargain. Here's the bargain. The constitutional bargain was we're going to give nonpaying debtors who are either unwilling or unable to pay a fresh start, but it was all predicated on nonpayment of their debt. And what the BestWall bankruptcy is seeking to do here is to violate that core North Star constitutional principle that justifies why we have bankruptcy in the first place. Now, of that group of cases, whatever the number is, do you know what percentage of them are in the state courts and within the federal courts? They've all been stopped. They were all brought. I know, but they're everywhere, though. They're everywhere. Every state in the union. Yes. In most every court. I would presume that's correct, Judge King. Because nobody's got an inventory to figure it out. They were all stopped, though, by virtue of the automatic stay. And it's that idea, Your Honors, that what BestWall is seeking to do is to transform disfavored creditors while using a new GP to take care of the creditors that it wants to, that creates the constitutional problem that no courts have had to grapple with because no debtor has had the audacity to do what BestWall is doing in this case. I'm happy to answer more questions. I think this is a very difficult and challenging case, and I'm here to help the court as best I can. You have reserved some time. Thank you. Mr. Francisco? Nice to see you, sir. Thank you, Judge King, and may it please the court, Noel Francisco for BestWall. At the time we filed this petition, there were 64,000 claims pending in the tort system, half of them for 10 years or more languishing, three-quarters of them for 15 years or more. At the same time, we were spending about $40 million a year just in litigation costs. This obviously benefited no one. Our proposed plan, in contrast, seeks to pay every valid claim 100 cents on the dollar and fast, and significantly it only applies if a supermajority of my friend's clients actually support it. I'm sorry on that. Has the plan been proposed? Your Honor, there is right now kind of a placeholder plan while we try to negotiate agreement with my friends. You really need to have the estimation process done before people can, before their clients, frankly, can make a reasonable decision on whether or not they want to vote in support of it. Up until now, we've been bogged down primarily because we faced a lot of resistance from our friends on the other side, including the appeal you had here in the contempt case, an appeal we had to take in the Third Circuit, where they're really fighting the estimation process. Our very strong interest is to get this thing done. These claimants are dying fast. He said 25,000 would die. And, Your Honor, when they were in the tort system, they were languishing in the tort system for 10 years, 15 years, or more. Some of them were getting trials. A very small number of them were getting trials. Our plan, in contrast, is the only possible way that you can possibly pay both the current claimants and the future claimants fast and in full without exposing everybody to the uncertainty that's inherent in the asbestos process. That's exactly what 524G is aimed at getting at. It's aimed at eliminating the uncertainty that's inherent in asbestos litigation. Asbestos disease has a 50 to 60-year latency period. Nobody knows what the world is going to look like in 50 to 60 years. The whole point of 524G is it allows us to eliminate that uncertainty today, not just for our benefit, but for their benefit and the benefit of all of the future people who aren't going to even manifest the disease for 50 to 60 years. Well, that's very, it is very helpful. And it sort of relates to the prior cases, may relate to a case that comes up on plain confirmation or some other point. But as I understand your opponent's argument, this, what we're here on now, is solely their claim of subject matter jurisdiction defects. So whenever you're ready to move to that. That is plainly wrong, Your Honor. The basic argument that they're making is that applying Chapter 11 to this case violates the bankruptcy clause. That's no different than coming in and arguing the application of a statute to a particular case violates the commerce clause. Nobody thinks that that is a jurisdictional question. That's why those questions can be forfeited. Judge Quattlebaum, I think you put your finger right on it when you looked at the analogy between 1331 federal question jurisdiction and 1334 bankruptcy jurisdiction. They're actually phrased in exactly the same way. The court shall have jurisdiction over cases involving laws of the United States in one and cases involving Chapter 11 in the other. If you actually take their argument seriously, every lawsuit in federal court under federal question jurisdiction 1331 that seeks to enforce a federal statute. Raises the non-waivable jurisdictional question whether that federal statute, for example, violates the commerce clause. That cannot possibly be right. That means every single case in a federal statute, you would be obligated to undertake the inquiry whether or not that federal statute was constitutional. They cite in their reply brief a case called Reed. There's a bunch of cases cited. It's the case that deals, this will be familiar with, criminal prosecution of the wife of a person in the military. The Supreme Court said something to the fact that the wife has Fifth Amendment rights, has Sixth Amendment rights. They used the term jurisdiction there. From the cases I read, it was maybe similar to the argument here. They're saying that, look, this case is going into a bankruptcy court. It's implicating our Fifth and Seventh Amendment rights. Sure. I don't know if you have a position on that case. Well, Your Honor, I think I have a couple of responses. I think the first one is that as the Supreme Court has made very clear over recent years, the term jurisdiction in the past has gotten thrown around in a very loose way. And here we're talking about a very specific type of jurisdiction where the court has said that Congress has to speak quite clearly in order to make something jurisdictional. Do you think the bankruptcy judge erred in ruling on subject matter jurisdiction? Yes, Your Honor, I do. And here I don't think there's any way you can look at the bankruptcy clause and see it as any different than any other enumerated power like the commerce clause that somehow imbues it with some jurisdictional concept. Now, to the extent I recall that case, and I don't have it at the front of my mind, but I think that it really did involve, you know, when you were prosecuting a non-military member in a military court. And you could see how that might start getting into what you would traditionally think of as a jurisdictional question. But that's very different when you're coming in with an argument that says the application of a federal statute to this case exceeds one of Congress's enumerated powers. When that happens, nobody has ever thought that that was a jurisdictional question. So I completely agree with what your questions are suggesting, which is that this is not a jurisdictional dispute. There are other ways that they can try to raise it, maybe down the road. I think that they're going to fail on the merits and probably for other reasons too. But they certainly can't raise it in the context of this interlocutory appeal. Maybe this isn't a jurisdictional question I'm about to ask, but I'd like your view on it. I mean, the Seventh Amendment right to a jury trial is important, and the Bankruptcy Code seems to speak to that in the terms of personal injury cases. Is there anything you can tell us about the ability of claimants to opt out? It may be totally irrelevant, but the overall context of making sure the Constitution is complied with is still important. Yes. The way that these plans always work is at the end of the day, any particular claimant has a right to say, I don't like what's being offered to me by the plan, and I'm going to go to court and exercise my right to a jury trial. Every court that has addressed this concept in the context of bankruptcy proceedings has said that that process satisfies both the statutory requirement and the Seventh Amendment constitutional requirement. Frankly, if there's anything here that I think has been abrogating their interest in getting a jury trial, it's the tort system. It was when they were languishing for 10, 15 years or more without a trial. This really is the only way we have to try to solve this problem. So if the process that's proposed in the plan is extremely aggressive and results in some cram down of the value of these claims, is the remedy for that to oppose confirmation and to not vote for the 524G? Is that the way that an issue like that would get flushed out? That is certainly the first step in the process, Your Honor. Look, we have every incentive to try to get not just 75% of them to agree, but to a much higher percentage than that. Because we don't hit that 75% threshold. We're thrown right back into the tort system and all of the uncertainty that we were dealing with back then. Our strong goal is to put forth a very strong plan that's not just going to get 75% support from their clients, but a much higher percentage from that. And again, I think we're going to be able to get there. We've got 40 years of litigation history in this field. We have a pretty good sense for what a fair price for a claim is. We're going to be putting those fair prices out there. But they're going to have a chance to say whether they agree with us or not. And if they don't agree with us, they're not going to vote for the plan. We have to hit that 75% threshold if any of this is going to work, which is why we have been working night and day to settle this case. We've already put a billion dollars on the table. That was our opening bid in the qualified trust. And we've been working night and day to try to resolve this issue. To be honest, I don't fully understand why my friends have been fighting so hard to prevent us from paying their clients. So, again, all this is interesting, but I'm not really sure it goes to what I understand the opposing party has said, which is this bankruptcy clause constitutional defect. And as I understood answers to the questions, opposing counsel indicated, I guess from 1789 when the Judiciary Act was first adopted, that this has just never come up in 230 years because there's never been a debtor like this. Your Honor, a response to that? Sure. Respectfully, I disagree. If you look at the modern-day corporate reorganization under Chapter 11, it doesn't typically involve an unwillingness to pay or an inability to pay. The core of their argument really, although they don't say this, is that there's an insolvency requirement that's baked into the bankruptcy clause. They keep using the word inability to pay. If you look up the definition of insolvency, either at the time of the founding or today, it is quite literally the inability to pay. So, effectively, what they're saying is that the bankruptcy clause has an insolvency requirement, but they can't admit that, because if they admitted that, that would render virtually the entire modern code unconstitutional. Well, if it doesn't have an insolvency requirement for which there might be at least some modicum of historical support, where do you get to this nebulous notion of financial trouble? There's simply no support for it at all. And if you were to follow their approach, you really are calling into question virtually the entire modern bankruptcy code. At the time of the founding, it did not apply to corporations. That didn't occur until the late 1800s. It was extremely controversial. At the time of the founding, there was no concept of a voluntary petition. Everything was involuntary. There certainly was no concept of a corporate restructuring such as is commonplace today. So ask yourself, what is in common between a modern-day voluntary corporate restructuring of a non-solvent debtor, happens today, and an involuntary petition against a merchant who had absconded without paying his debts back in 1789? The one thing that those two things have in common is what the Supreme Court has said is the core of the bankruptcy power. This is the Siegel decision, 2022. The subject of bankruptcies is incapable of final definition and includes nothing less than the subject of relations between a debtor and his creditors. So I think that's the full answer to their constitutional question, both on the merits and from a jurisdictional perspective. There's simply no basis to say that arguing that Congress has exceeded its enumerated powers either on its face or as applied in a particular case is a jurisdictional question. It's a merits question. Even if you get to the merits, it fails on the merits. So one sort of final point I want to make on this is even if you had bought into this general notion that there ought to be some notion of financial trouble or financial distress, whether baked into the Constitution or into the code, even though the code says absolutely nothing about it, I actually think that 524G is best understood. Well, it does if it's a Chapter 9 municipal bankruptcy. And I think that's the only place in the bankruptcy code that that shows up. I 100% agree, Your Honor. But if you look at 524G itself, it really is, in a sense, an asbestos-specific financial trouble requirement. It only applies if a debtor is faced with future asbestos liabilities. If the timing, number, scope, size of those liabilities is uncertain, if that uncertainty threatens the ability to treat both the future unknown claimants, who haven't even manifested the disease yet, with the current known ones fairly and equitably, if three-quarters of them support it, and if a bankruptcy court and a district court approve it. And that's why in this case the bankruptcy court explicitly found that we met the quote-unquote financial distress requirements that were baked into 524G itself. And again, it goes back to what the whole point of 524G is. It's to eliminate that uncertainty given the 50 to 60-year latency period of asbestos diseases. We can eliminate the uncertainty that both we and they face over the next 50 to 60 years by coming to an agreement today to eliminate that uncertainty. But only, again, if they support it, if we have a future claimants representative that supports the unknown future claimants so their interests are protected, and if you have a bankruptcy court and a district court that then approves of that plan. So I think that there's no way that there's jurisdiction here. But even if you somehow were able to twist yourself into knots to figure out how a straightforward argument that a law is unconstitutional is a jurisdictional question, even if you could get through that basic position, there's no way that this claim survives on the merits either. Thank you. I am happy to answer other questions you have, Your Honor. May I take one second before I cede the rest of my time?  Thank you, Your Honors. Thank you very much, sir. Mr. Frederick? Judge Guadalbama, if I could start with your question. The Reed case holds clearly that Congress cannot use Article I powers to expand Article III beyond constitutional limits. That was the whole point of saying there was no jurisdiction over the wife of a service member. Judge Agee, to your questions about solvency, we are not attacking or trying to change insolvency requirements that are statutorily set forth. What we're saying is that this case can be resolved from the very simple principle that their own concession and the finding by the bankruptcy court of their ability to meet all their obligations now and in the foreseeable future means that they are not a proper debtor within the bankruptcy clause's meaning. It has a subject matter jurisdiction component because at the founding, there was both a substantive and a procedural quality to the meaning of a bankruptcy. Substantively, it was applying to nonpaying debtors. Procedurally, it was transforming what were state bankruptcy practices into a uniform practice under federal court jurisdiction. But that federal court jurisdiction cannot undercut or undermine the limitations that are imposed by Article III itself. That's why Congress couldn't change the diversity requirement after the Supreme Court held that the Constitution required complete diversity. That's why the court has had many cases construing standing, construing the words what is a case or controversy, a very vague and general term, to limit the scope of Article III jurisdiction. All we are saying is that in light of the other structural protections in the Constitution for due process, for jury trial rights, it is improper to construe bankruptcy clause in a manner that would delimit what a bankruptcy is because of the profound effects that that would have on... You mentioned Reid and I asked your colleague about that and you had a response. I spent some time with that and the word jurisdiction is used in that case a decent amount, but it seems like it's really referring to the military court's jurisdiction. And it's not talking about federal subject matter jurisdiction like we're having here. It seems to me if I read that... Tell me if I'm wrong. You've spent more time with it than me, but I read that case more along the lines that prosecuting a military person's spouse in military courts would be unconstitutional than it would be a – than dealing with a question of whether the military code has – is a federal question. That's because ordinarily military courts marshals are not in Article III courts. Well, I understand, but that – yes, you're right, but that also may be a reason why that shows your argument is that maybe this process is unconstitutional, not that we don't have subject matter jurisdiction to deal with it. You have subject matter jurisdiction to decide your jurisdiction. Well, I understand that. The point, though, is that just like standing or if we were to come in here with a nondiverse set of parties, you would say on the facts as applied, you do not meet the constitutional limitations of an Article III court, right? And so here what we're saying is that as applied in this circumstance, because of the concessions they have made, they have taken themselves out of the jurisdiction of an Article III court, which they have to have in order to get a 524G injunction. Because the channeling injunction purpose of 524G is to tell all state courts everywhere if you get a claim, you have to shunt it off to the bankruptcy court process or to the trust process. That is a fundamental transformation of our federalist system. And that is why –  I shouldn't do this, but I can't resist. But to get at what was the interpretation of 1789, you're relying on what are really Second Amendment cases. Somebody cites Heller in here. Well, the Rahimi principle of constitutional interpretation is supported by the three prongs of our argument. Textualism. At the time of the founding, bankruptcy had a meaning. It was non-paying debtor. History. Throughout the course of history. It also allowed debtors prisons at that time. And during the convention, there was apparently the only discussion on the bankruptcy clause was whether or not the death penalty would be allowed. Those were for unwilling debtors. The process that would be triggered by creditors for putting non-paying but able debtors through their paces. There are two forms of debtors that we're talking about under the bankruptcy clause. Those that are unwilling and those that are unable. This case only concerns the ability to pay because Bestwald has said throughout it is willing to do so. And the question is whether you're going to allow this case to set a precedent for wealthy corporations across the country to invoke bankruptcy, to figure out how to get venue in the Western District of North Carolina, which has – Congress did that, not us. So, I mean, you have an argument that's fair, but to try to suggest – we interpret the law. We're not creating something. Congress either, as Judge Edgey mentioned earlier, it would be – this has been in the news for a while. It would be easy with a stroke of a pen to put up the sort of requirement in the code that you're saying exists. But you have the power to determine what the power of the federal judiciary is under Article III. For sure. And you have the power to say as applied interpreting the statute as Bestwald and the bankruptcy court has sought to do is unconstitutional because it expands the subject matter jurisdiction of federal courts beyond proper limits. You have that power, Judge Quattlebaum, and that's what we're suggesting that you do here. We're not trying to say there are no proper nonpaying debtors who can't invoke bankruptcy. But where they concede and where it's been found, they have the full ability to pay now and into the conceivable future. That surely expands and delimits Article III jurisdiction. And we know from standing and other principles that having limited jurisdiction is a core element of the constitutional bargain that was made at the founding. Unless the court has anything further, I would just close by saying this bankruptcy has already been going for eight years. It's likely to go for another five. So the idea that somehow the state tort system is inferior to this process on the basis of speed is wrong. Creditors are supposed to be driving Chapter 11 in order to maximize the return for creditors from a limited res. In an interim action where you have basically an unlimited res, you are transforming the bargaining leverage in a Chapter 11 from the creditors who ordinarily have that leverage to the debtor, which is seeking, willing to pay, but only on its own terms. And that's why Bestwell has already rejected two plans that have been proposed by the creditors. This process is not going to end, and I do not mean to suggest there is something that you shouldn't do, but you have to police what is going on with these bankruptcies with corporations that have every ability and willingness to pay, but are seeking to change the bankruptcy system in a manner that harms those that the corporation has hindered. You've already got your plan confirmation argument down. But, Your Honor, why would we have to go for five more years where it's not- But you've raised subject matter jurisdiction here. Yes. All of this could go to the merits of that. It's not subject matter jurisdiction. It is subject matter jurisdiction if it falls outside the limitations imposed by the word bankruptcy in Article I. That position, Your Honor, is that we're going to allow a special process to delimit Article III jurisdiction for bankruptcy, and the answer to that is going to be every wealthy corporation that wants to get out of its leases, its office leases, its payment contracts, is going to invoke a bankruptcy, get it into the Western District of North Carolina, and then come up to this circuit where you're going to say, wait till confirmation. What about those 524Gs? Your Honor, the 524G problem that he is seeking to evade is the fact that after they have rejected two proposed plans of confirmation, it's very clear to the claimants they are only willing to accept a plan that would be on their own terms. And that means that it will not get the requisite number of votes to qualify as 524G, and in the meantime, BestWall gets a payment holiday. While they have not paid any claimants over the last eight years, Georgia Pacific is upstream to Koch Industries $7.5 billion of dividends, which probably would have taken care of all the claimants. It probably would have taken care of the trust. But that's not what they're seeking to do. They're seeking to force a situation where the estates of deceased asbestos victims have to come supplicating to BestWall in order to get something, and that's not right, and there's no basis for there to be a conclusion that Congress or the founders intended the bankruptcy process to cause that to be within an Article III court. Thank you very much, Mr. Frederick. Thank you. We appreciate the arguments of counsel. We'll take the matter under advisement. We're going to come down to Greek counsel and then proceed to the next case.
judges: Robert B. King, G. Steven Agee, A. Marvin Quattlebaum Jr.